NOTICE

Decision filed 07/27/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250114-U

NO. 5-25-0114

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 00-CF-2229 |
| | ) | |
| MICHAEL L. SPARKS, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Cates and Justice McHaney concurred in the judgment.

ORDER

¶ 1    *Held*:  We affirm the circuit court's denial of defendant's motion for leave to file a successive postconviction petition where defendant's brief failed to comply with this court's briefing rules and where defendant failed to make a *prima facie* showing of cause and prejudice. We decline the State's request for sanctions.

¶ 2    On October 31, 2002, a Madison County jury found defendant, Michael L. Sparks, guilty of first degree murder for the shooting death of his wife. The trial court sentenced defendant to 35 years in the Illinois Department of Corrections. This court affirmed defendant's conviction and sentence on direct appeal. See *People v. Sparks*, No. 5-03-0297 (Apr. 11, 2006) (unpublished order under Illinois Supreme Court Rule 23). Defendant filed a postconviction petition which the trial court dismissed. This court reversed the dismissal. See *People v. Sparks*, No. 5-09-0314, order at 3 (Apr. 15, 2010) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

1

On remand, the trial court dismissed some claims at the second stage and dismissed the remaining claim after a third-stage evidentiary hearing. This court affirmed the dismissal. See *People v. Sparks*, 2013 IL App (5th) 130059-U. On March 24, 2014, defendant filed a motion for leave to file a successive postconviction petition. The trial court denied leave and a motion to reconsider. The trial court denied defendant's subsequent December 16, 2016, motion for leave to file a successive postconviction petition. This court affirmed the trial court's denial. *People v. Sparks*, 2020 IL App (5th) 170096-U.

¶ 3       On September 13, 2024, defendant filed another motion for leave to file a successive postconviction petition. On January 30, 2025, the trial court denied the motion for leave. Defendant now appeals. On appeal, defendant argues that the postconviction petition "should not have been dismissed at the first stage." Defendant contends that "a factual question exists as to whether the prosecution misled the jury" at his trial, where a prosecution witness that resided in the jail with defendant testified to things defendant said to the witness and later received a reduced sentence for the witness's own crime. Defendant argues that his case should "be remanded for a [s]econd [s]tage hearing" or "proceed to the third stage" to explore the potential deal the witness got in exchange for his testimony. For the following reasons, we affirm.

¶ 4                                    I. Background

¶ 5       Defendant's case again returns to this court amidst a lengthy ongoing history of litigation.[1] Therefore, we limit our recitation to include only those facts necessary for the disposition of this appeal.

---

[1]Though not exhaustive, see generally *People v. Sparks*, 364 Ill. App. 3d 1068 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23); *People v. Sparks*, 398 Ill. App. 3d 1122 (2010) (table) (unpublished summary order under Illinois Supreme Court Rule 23(c)); *People v. Sparks*, 2013 IL App (5th) 130059-U; *Sparks v. Butler*, No. 14-CV-1044-MJR, 2018 WL 1071746 (S.D. Ill. Feb. 26, 2018); *Sparks v. Dorethy*, No. 14-CV-1044-NJR, 2020 WL 1472128 (S.D. Ill. Mar. 26, 2020); *People v. Sparks*, 2020 IL App (5th) 170096-U.

¶ 6     On October 30, 2001, approximately one year before defendant's jury trial, the State disclosed Manuel Tomerlin as a witness. The State disclosed Tomerlin's written statement, criminal history, and his cooperation agreement wherein the State would reduce his first degree murder charge to second degree in exchange for his cooperation. Following a November 5, 2001, bond hearing, the parties stipulated to Tomerlin's criminal history and placed the cooperation agreement on the record.

¶ 7     Tomerlin's testimony is not found in the report of proceedings, but in its opening statement the State indicated Tomerlin would testify that defendant resided with Tomerlin in the Madison County jail and, one morning, defendant confessed to Tomerlin that he shot his wife because she was going to take his property in a pending divorce. Following further evidence and testimony, the jury found defendant guilty and the court sentenced him to 35 years in prison. As recounted above, several appeals followed. Pertinent to this appeal is the appellate history relating to Tomerlin.

¶ 8     On direct appeal, this court found no prosecutorial misconduct in the deal the State made with Tomerlin. See *People v. Sparks*, No. 5-03-0297 (Apr. 11, 2006) (unpublished order under Illinois Supreme Court Rule 23). On May 24, 2007, defendant filed a petition for postconviction relief pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2006)), alleging, *inter alia*, that he received ineffective assistance of counsel, when defense counsel failed to investigate and produce witnesses to rebut Tomerlin's testimony. Defendant further alleged that his confession to Tomerlin was obtained in violation of his constitutional rights. The trial court dismissed the petition. This court reversed and remanded the dismissal. See *People v. Sparks*, No. 5-09-0314, order at 3 (Apr. 15, 2010) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 9 On remand, defendant filed an amended postconviction petition that argued, *inter alia*, when Tomerlin testified, the State presented testimony it knew or reasonably should have known was false. Defendant further contended that his confession to Tomerlin was obtained in violation of his constitutional rights; that trial counsel was ineffective for failing to investigate or produce witnesses to rebut Tomerlin's testimony; and that appellate counsel was ineffective for failing to raise on appeal the issue of trial counsel's ineffectiveness. In support of his contention that the State knew or reasonably should have known that Tomerlin presented false testimony, defendant attached a July 6, 2007, affidavit of Jeremy Brown, a former inmate at the Madison County jail. The affidavit detailed that Tomerlin told Brown that defendant had not spoken to Tomerlin about the case and any information Tomerlin provided to prosecutors was actually obtained from newspaper articles.

¶ 10 On September 16, 2010, the State filed a motion to dismiss defendant's amended postconviction petition arguing that defendant waived his claims regarding Tomerlin's testimony because he should have raised these issues in a posttrial motion or on direct appeal and failed to do so. The trial court granted the State's motion to dismiss with regard to defendant's claims concerning Tomerlin's testimony. The trial court, alternatively, found that trial counsel was not ineffective for failing to investigate or produce rebuttal witnesses to challenge Tomerlin's testimony. The trial court found that defense counsel was aware of possible rebuttal witnesses but chose not to put them on the stand as a matter of trial strategy.

¶ 11 Regarding defendant's claims that the State knew or should have known that Tomerlin's testimony was false and that defendant's constitutional rights were violated, the trial court found that these issues either had been raised on appeal or could have been raised on appeal and the failure to do so barred defendant from raising them in a postconviction petition. The trial court

pointed to this court's 2006 order on direct appeal finding no prosecutorial misconduct in the deal the State made with Tomerlin. The trial court dismissed these claims at the second stage and dismissed a remaining claim after a third-stage evidentiary hearing. This court affirmed the dismissal finding that defendant's affidavits were insufficient to merit an evidentiary hearing on the ineffective assistance of counsel claims and that no prosecutorial misconduct occurred regarding the State's deal with Tomerlin. See *People v. Sparks*, 2013 IL App (5th) 130059-U.

¶ 12    On March 24, 2014, defendant filed a *pro se* motion for leave to file a successive postconviction petition pursuant to section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2012)). Defendant subsequently filed an amended *pro se* motion for leave to file a successive postconviction petition on May 16, 2014. In his amended motion and proposed second postconviction petition, defendant alleged, *inter alia*, that the judge and prosecutors involved with his case had a "historic" relationship with Tomerlin. Defendant contended that this relationship denied him an impartial tribunal in violation of his constitutional rights; that the State knowingly permitted Tomerlin to provide misleading or false testimony; that defendant received ineffective assistance of counsel both at the trial and appellate levels; and that he was unable to bring these claims in his previous postconviction proceedings because the State failed to disclose its relationship with Tomerlin and the deals it had previously worked out with him in other cases. On January 22, 2015, the trial court granted the State's motion in opposition and denied defendant leave to file his successive postconviction petition. On January 26, 2015, defendant filed a timely notice of appeal. However, on February 11, 2015, defendant filed a motion to reconsider in the trial court. At the request of appellate counsel, this court dismissed defendant's appeal as premature. On April 9, 2015, the trial court denied defendant's motion to reconsider. Defendant never appealed the trial court's denial of his motion for leave to file the successive postconviction

5

petition or the denial of his motion to reconsider, nor did he attempt to reinstate the previously dismissed premature appeal.

¶ 13    On December 16, 2016, defendant filed another motion for leave to file a successive postconviction petition. In his third proposed postconviction petition, defendant made wide-ranging allegations:

> "In the defendant's third postconviction petition he stated that he 'ha[d] been made aware of new information pertaining [*sic*] to substantial violations of due process at trial' and that this evidence 'warrants an acquittal.' He then went on to allege that (1) '[d]uring the defendant's trial the State committed [h]igh [c]rimes to obtain a conviction'; (2) his conviction 'was influenced by perjury at trial'; (3) '[d]uring the trial Judge Charles Romani was bias [*sic*] and prejudice [*sic*] against the [d]efendant'; and (4) '[f]rom 1978 through the [d]efendant's trail [*sic*] in 2000 the State's Attorney's Office and the [Third Judicial Circuit] created a danger that injured the judiciary and the citizens of Madison County, Illinois and ultimately the [d]efendant's rights at trial.' The defendant then recounted the numerous interactions Tomerlin and the Madison County State's Attorney's Office had between 1978 and 2000 and the sentences Tomerlin received as a result of assisting the office with prosecuting other criminal cases. The defendant referenced 24 exhibits throughout his memorandum and brief which document Tomerlin's crimes, sentences, and interactions with the Madison County State's Attorney's Office." *People v. Sparks*, 2020 IL App (5th) 170096-U, ¶ 16.

¶ 14    On February 8, 2017, the trial court denied defendant's motion for leave to file a successive postconviction petition. On defendant's enumerated issues (1), (3), and (4), the trial court found that defendant had "set forth no cause why these issues could not have been raised either on direct appeal or during the initial post-conviction proceeding." The court also noted that defendant's allegations were "completely conclusory, purely speculative, and not supported by any facts or supporting documentation." On defendant's enumerated issue (2), related to alleged perjury in Tomerlin's testimony, the trial court found that the issue "was addressed extensively in the initial appeal *** and again in a prior amended post-conviction petition ***." On August 17, 2020, this court affirmed the trial court's denial, finding that defendant failed to make a *prima facie* case of cause and prejudice. *Id.* ¶¶ 26-32.

6

¶ 15    On September 13, 2024, defendant filed another *pro se* motion for leave to file a successive postconviction petition. Defendant alleged, *inter alia*, that the jury at his trial was "deprived of learning" Tomerlin's complete criminal history and that such disclosure failure violated *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant contended that his case was not the first occasion that Tomerlin testified against a fellow inmate in cooperation with the State. He alleged that the State deprived the jury of the opportunity to learn of and weigh all Tomerlin's prior deals with prosecutors. Defendant further argued that cause and prejudice were satisfied because "the suppressed evidence is material" and his claims were not barred by forfeiture because he received ineffective assistance of appellate counsel.

¶ 16    On January 30, 2025, the trial court denied defendant's motion for leave to file a successive postconviction petition. The court found that the issues associated with Tomerlin's testimony, criminal history, cooperation agreements, alleged perjury, and alleged prosecutorial misconduct "have all been addressed extensively throughout the appeals and multiple post-conviction rulings." The court specifically noted that these issues were addressed in the direct appeal and first postconviction petition. The court found these issues barred by the doctrine of *res judicata* because defendant failed to make a *prima facie* showing of cause and prejudice.

¶ 17    The trial court determined that cause could not be established because defendant's allegations had already been raised on appeal or in postconviction proceedings. The court detailed that appellate counsel was not ineffective for failing to raise claims contradicted by the record. On October 30, 2001, the prosecution disclosed Tomerlin as a witness and included his written statement, criminal history, and cooperation agreement. Following a November 5, 2001, bond hearing, the parties stipulated to Tomerlin's criminal history and placed the cooperation agreement on the record. The court concluded that defendant's contentions were subject to either

7

*res judicata* or waiver, and that defendant failed to establish cause and prejudice, and denied defendant's motion for leave to file a successive postconviction petition. On February 19, 2025, defendant filed his notice of appeal.

¶ 18                                     II. Analysis

¶ 19    On appeal, defendant, represented by private counsel, argues that the postconviction petition "should not have been dismissed at the first stage." Defendant contends that "a factual question exists as to whether the prosecution misled the jury" where Tomerlin testified to things defendant said to him while the two resided together in the Madison County jail and later received a reduced sentence for his own crime. Defendant argues that his case should "be remanded for a [s]econd [s]tage hearing" or "proceed to the third stage" to explore the potential deal Tomerlin got in exchange for his testimony. The State responds that defendant forfeited the issue of the trial court's denial of his motion for leave to file a successive postconviction petition by "failing to address the court's cause and prejudice finding and analyzing the court's ruling as a stage one summary dismissal." The State further rebuts that—on the merits—defendant failed to establish cause and prejudice and therefore his claims are barred by *res judicata* and forfeiture. The State asks this court to impose sanctions "to prevent defendant from continuing his pattern of frivolous filings regarding Tomerlin."

¶ 20                                A. Defendant's Claims

¶ 21    Defendant states "[t]his case was dismissed at the first stage." The State rebuts that this case never reached the first stage, but instead the trial court denied defendant's motion for leave to file a successive postconviction petition and therefore defendant "invites this Court to use the wrong standard." In his reply, defendant argues that "the State overlooks the fact that the legal

8

criteria and the standard of review for both [first-stage dismissal and denial of a motion for leave to file a successive postconviction petition] are the same."

¶ 22 Defendant is correct that both a trial court's first-stage postconviction dismissal and denial of a motion for leave to file a successive postconviction petition are reviewed *de novo*. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009) (first-stage dismissal reviewed *de novo*); *People v. Bailey*, 2017 IL 121450, ¶ 13 (denial of a motion for leave to file a successive postconviction petition reviewed *de novo*). However, that is where the similarities end as it relates to defendant's legal argument on appeal. Rule 341(h)(7) requires an appellant's arguments on appeal to be supported with facts and citations to relevant authority and pages of the record. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). "Points not argued are forfeited and shall not be raised in the reply brief ***." *Id.* In his brief, defendant frames the context of the appeal as if it was a first-stage dismissal. He cites authorities relating to first-stage dismissals. Defendant states, "This case was dismissed at the first stage." That is not so. The trial court denied defendant's motion for leave to file a successive postconviction petition. In doing so, it found defendant's contentions barred by *res judicata* and waiver and found that defendant failed to establish a *prima facie* case of cause and prejudice. In framing the case's context on appeal as a first-stage dismissal, defendant misidentifies the basis of his appeal. This incorrect framing results in defendant failing to address the pertinent issues on appeal; namely, the trial court's denial of defendant's motion for leave to file a successive postconviction petition due to *res judicata*, waiver, and failure to establish cause and prejudice. "The appellate court is not simply a depository into which an appealing party may dump the burden of argument and research." *People v. Greer*, 336 Ill. App. 3d 965, 980 (2003). We decline to reframe defendant's arguments in an attempt to rescue him from his failure to address the trial court's denial of his motion for leave to file a successive postconviction petition. Because of this

fundamental misframing of the basis for his appeal, we find defendant's contentions forfeited. Ill. S. Ct. R. 341(h)(7).

¶ 23 Even assuming, *arguendo*, that defendant properly framed his arguments on this appeal, his contentions still fail on the merits. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) contemplates the filing of only one postconviction petition. However, the Act does provide a mechanism by which successive petitions may be filed. *Id.* § 122-1(f). Section 122-1(f) provides:

> "(f) Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 24 Section 122-1(f) is an exception to the rule contemplating the filing of only one postconviction petition. *Bailey*, 2017 IL 121450, ¶ 15. A successive postconviction petition can only occur upon a defendant obtaining leave of court. *Id.* Leave of court is not granted unless defendant satisfies the cause-and-prejudice test. *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010). "A defendant shows cause 'by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' " *People v. Wrice*, 2012 IL 111860, ¶ 48 (quoting 725 ILCS 5/122-1(f) (West 2010)). "A defendant shows prejudice 'by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process.' " *Id.*

¶ 25 Section 122-3 of the Act sets forth that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2022).

10

The doctrine of waiver bars claims that could have been raised previously. *People v. Newbolds*, 364 Ill. App. 3d 672, 675 (2006). In addition to waiver, potential successive postconviction petitions must also overcome the doctrine of *res judicata*. *People v. Clark*, 2023 IL 127273, ¶ 41. This doctrine bars consideration of contentions that were previously raised and settled by judicial decision. *Newbolds*, 364 Ill. App. 3d at 675. Courts, at times, can relax the effect of these doctrines. *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005). However, when a defendant seeks leave to file a "highly disfavored successive postconviction," section 122-3 can result in waiver of issues not raised in the initial postconviction proceeding, and the doctrine of *res judicata* bars issues already settled by a judicial decision. *Clark*, 2023 IL 127273, ¶ 42. These hurdles are seldom overcome. One pathway to do so for defendants is the cause-and-prejudice test. *Id.* ("Defendant seeks to avoid the procedural consequences of *res judicata* and waiver by application of the cause-and-prejudice test."). Both elements of the test must be satisfied, and a defendant must do so on the pleadings. *Id.* ¶ 47. The trial court conducts a " 'preliminary screening' to determine whether the motion adequately alleges facts that make a *prima facie* showing of cause and prejudice." *Id.* (quoting *Bailey*, 2017 IL 121450, ¶ 24). As noted, we review the trial court's determination *de novo*. *Id.* (citing *People v. Robinson*, 2020 IL 123849, ¶ 39).

¶ 26   Here, defendant alleges that Tomerlin's previous criminal history was not disclosed; the State deprived the jury of the opportunity to learn of and weigh Tomerlin's prior deals with prosecutors; and that the State misled the jury regarding Tomerlin's cooperation agreement. The State argues—in agreement with the trial court—that all defendant's claims are rebutted by the record and have already been extensively litigated. We agree.

¶ 27   Defendant is incorrect that there was any failure to disclose Tomerlin's criminal history or cooperation agreement. On October 30, 2001, approximately one year before defendant's jury

11

trial, the State disclosed Tomerlin as a witness. The State disclosed Tomerlin's written statement, criminal history, and his cooperation agreement wherein the State would reduce his first degree murder charge to second degree in exchange for his cooperation. Following a November 5, 2001, bond hearing, the parties stipulated to Tomerlin's criminal history and placed the cooperation agreement on the record.

¶ 28    On direct appeal, this court found no prosecutorial misconduct in the deal the State reached with Tomerlin. See *Sparks*, No. 5-03-0297 (Apr. 11, 2006) (unpublished order under Illinois Supreme Court Rule 23). In his 2010 postconviction petition, defendant alleged that the State should have known Tomerlin presented false testimony; the prosecution misled the jury about Tomerlin's cooperation agreement; and that he received ineffective trial and appellate counsel. The trial court dismissed these claims at the second stage, finding they should have been raised on direct appeal. The court found that defendant did not receive ineffective assistance of counsel because counsel knew of rebuttal witnesses to counter Tomerlin's testimony but did not put them on the stand as a matter of trial strategy. This court affirmed on appeal. See *Sparks*, 2013 IL App (5th) 130059-U.

¶ 29    Defendant's 2014 motion for leave to file a successive postconviction petition alleged the judge and prosecutors involved with his case had a "historic" relationship with Tomerlin. Defendant contended that this relationship denied him an impartial tribunal in violation of his constitutional rights; that the State knowingly permitted Tomerlin to provide misleading or false testimony; that defendant received ineffective assistance of counsel both at the trial and appellate levels; and that he was unable to bring these claims in his previous postconviction proceedings because the State failed to disclose its relationship with Tomerlin and the deals it had previously

12

worked out with him in other cases. The court denied his motion, noting these claims were already extensively litigated.

¶ 30 Defendant's 2016 motion for leave to file a successive postconviction petition raised substantially the same contentions regarding Tomerlin, his testimony, and the State's dealings with him. The trial court denied defendant's motion and found that defendant had "set forth no cause why these issues could not have been raised either on direct appeal or during the initial post-conviction proceeding." The court also noted that defendant's allegations were "completely conclusory, purely speculative, and not supported by any facts or supporting documentation." Regarding alleged perjury in Tomerlin's testimony, the trial court found that the issue "was addressed extensively in the initial appeal *** and again in a prior amended post-conviction petition ***." This court affirmed on appeal, agreeing with the trial court that waiver and *res judicata* barred defendant's claims. This court also concluded that defendant failed to establish cause and prejudice. See *Sparks*, 2020 IL App (5th) 170096-U.

¶ 31 We now similarly agree with the trial court in this current appeal that defendant's contentions have been extensively litigated. Tomerlin's testimony, criminal history, cooperation agreement, and alleged perjury have been raised and addressed for nearly 20 years in state and federal courts. The doctrine of *res judicata* bars defendant from once again litigating these issues. Defendant's attempt to establish cause by claiming ineffective assistance of appellate counsel similarly fails. Not only have defendant's ineffective assistance claims been previously litigated, but they are also rebutted by the record. Counsel is not ineffective for failing to contend that Tomerlin's criminal history was not disclosed when the record demonstrates it was disclosed. In sum, even if defendant did not forfeit his contentions by improperly framing and briefing the

13

issues on appeal, his argument still fails on the merits. Defendant's issues are barred by waiver and *res judicata*, and he failed to establish a *prima facie* showing of cause and prejudice.

¶ 32                                B. The State's Request for Sanctions

¶ 33    The State asks this court to impose sanctions on defendant for "repeated frivolous pleadings regarding Tomerlin's testimony." The State argues that defendant has raised issues regarding Tomerlin "on direct appeal, in his initial post-conviction proceedings, in two previous motions for leave to file successive post-conviction petitions, in a federal *habeas corpus* petition, and now in his motion." The State requests sanctions against defendant totaling $2,350 in costs and fees as detailed in a statement of costs and fees appended to its brief.

¶ 34    Illinois Supreme Court Rule 375 provides sanctions for frivolous appeals not taken in good faith:

> "If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 35    An appeal is considered frivolous "where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." *Id.* An appeal is considered taken for an improper purpose "where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." *Id.* Reviewing courts apply an objective standard to determine whether an appeal is frivolous by considering whether the appeal " 'would not have been brought in good faith by a reasonable, prudent attorney.' " *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87 (quoting *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312 (1990)). The

14

imposition of sanctions is left to the discretion of the court. *Id.* Potential sanctions "may include an order to pay to the other party or parties damages, the reasonable costs of the appeal or other action, and any other expenses necessarily incurred by the filing of the appeal or other action, including reasonable attorney fees." Ill. S. Ct. R. 375(b). The committee comments to the rule clarify that the penalties for violating Rule 375(b) may include a fine: "Under paragraph (b), a penal fine may be imposed if the conduct in a particular case also constitutes a violation of the civil appeals rules as set forth in paragraph (a) above." Ill. S. Ct. R. 375(b), Committee Comments (adopted Aug. 1, 1989).

¶ 36    Defendant's instant appeal is frivolous. Defendant's wide-ranging allegations surrounding Tomerlin have been raised and addressed on direct appeal, in initial postconviction proceedings, in two previous motions for leave to file successive postconviction petitions, and a federal *habeas corpus* petition. This present third attempt to seek leave to file a successive postconviction petition raises precisely the same contentions already heard by courts. Defendant only slightly rephrases and reframes his previously attempted claims. Further, as we detailed *supra*, defendant did not properly present the basis for his appeal in accordance with Rule 341(h)(7). Defendant briefed his appeal as though it was a first-stage dismissal, not a denial of a motion for leave to file a successive postconviction petition. Throughout the case's extensive history, defendant proceeded *pro se* on many occasions. Here, however, we note that a licensed and practicing attorney took up defendant's case for this appeal. As detailed above, we conclude that this case could not have been brought in good faith by a reasonable, prudent attorney. However, we exercise our discretion and decline to impose sanctions at this time. *Korzen*, 2013 IL App (1st) 130380, ¶ 87. We instead admonish defendant, and his counsel, to exercise great caution in filing

any future appeals. Any additional frivolous appeals that tax the resources of this court may result in sanctions.

¶ 37    In conclusion, defendant's contentions are forfeited under Rule 341(h)(7). Alternatively, even if defendant properly framed the issues on appeal, the contentions fail on the merits. We strongly admonish defendant to avoid filing additional frivolous appeals to avoid sanctions.

¶ 38                                    III. Conclusion

¶ 39    For the foregoing reasons, we affirm the order of the circuit court of Madison County.


¶ 40    Affirmed.